IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RUTH MARIE H.,[1] | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 18-cv-148-CJP[2] |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in July 2014, alleging disability as of June 5, 2014. After holding an evidentiary hearing, ALJ Charles Shinn denied the application on February 16, 2017. (Tr. 19-28). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 24.

this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to fully ground his RFC determination in the evidence.

2. The ALJ failed to discuss evidence at odds with his ultimate conclusion.

3. The ALJ failed to ask plaintiff questions about her abilities and limitations regarding the use of her hands.

4. The ALJ erred in assessing plaintiff's daily activities.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th

Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of

Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of

the ALJ. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Shinn followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. She is insured for DIB through December 31, 2019. He found that plaintiff had severe impairments of COPD, degenerative disc disease of the lumbar spine, cervical osteoarthritis, and hearing loss.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolding; frequent reaching overhead with the bilateral upper extremities; no exposure to extreme temperatures or pulmonary irritants; no exposure to hazards such as unprotected heights or machinery; and limited to work settings with no more than moderate noise levels.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do her past work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in

formulating this Memorandum and Order.  The following summary of the record is directed to the points raised by plaintiff.

   1.   **Agency Forms**

Plaintiff was born in 1963 and was almost 51 years old on the alleged date of onset.  (Tr. 188).  She had done cleaning work in homes, hospitals, and a nursing home.  (Tr. 193).

In September 2014, plaintiff reported that she cleaned her house "a little each day."  She tried to help her daughter with the grandkids.  She could not lift her grandson "a lot anymore."  She prepared meals, but it was always "something fast and easy."  She did laundry, dishes, and dusting, but only a "little each day." (Tr. 213-220).

In October 2014, plaintiff reported that Dr. Yu would not see her anymore because she had an outstanding bill for $75.00.  (Tr. 224).  In February 2015, she said that Dr. Freehill had treated her back and hips with two injections and therapy, and Dr. Kovalsky has treated her neck and right arm with medication and injection therapy.  She had an appointment to see Dr. Polistico.  (Tr. 228-229). She pointed out that "You did not get any of my records from [the] Orthopedic Center."  She said the doctor there said she needed surgery.  The Orthopedic Center would not see her anymore because of her debt to them.  (Tr. 231).

In June 2015, she said that Dr. Polistico had prescribed a muscle relaxer; Meloxicam for joint inflammation; and Symbicort for COPD.  (Tr. 252).  She said she was "trying to find a doctor to treat me for my neck and back conditions since I

am on medical card now." (Tr. 254).

In January 2017, plaintiff said she had seen Dr. Polistico and Dr. Yu in December 2016, and she had "serious problems" with her back and needed to see a back specialist. (Tr. 276). She said she was having problems finding a back specialist and a neurologist. Dr. Polistico had given her the name of two specialists, but they would not see her. She felt like no one would help her because she had a medical card. (Tr. 278-279).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in February 2017.[4] (Tr. 33).

Plaintiff was 5'7" and weighed about 110 pounds. She lived with her daughter and two grandsons. (Tr. 39).

Plaintiff testified that she could not work because she was in pain every day. She had pain in her low back which affected her legs. She had a tear in her left hip. She had pain in her neck and in her arms, wrists, and hands. (Tr. 40-41). She was wearing a splint on her right arm. She said she had carpal tunnel syndrome on both sides. (Tr. 43). She said her left arm "catches" and she had pain in her left shoulder. (Tr. 48).

She spent her time reading and she colored with her grandson. (Tr. 44). Her grandsons were 4 and 3. She could not pick them up. (Tr. 49).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical

---
[4] Plaintiff is represented by a different attorney in this Court.

question which corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past work, but she could do other jobs such as cashier, sales attendant, and office helper. (Tr. 51-52).

3.  **Medical Records**

The transcript contains records from Dr. Evelyn Yu from October 2013 through December 2013, prior to the alleged date of onset. Plaintiff complained of low back pain after she lifted something at work. Dr. Yu prescribed Flexeril and told her to stay off work for 2 to 3 days. (Tr. 289-293).

Dr. Raymond Leung performed a consultative exam in December 2014. Plaintiff said she was hard of hearing. She had hearing aids, but she did not wear them because they did not help, and they hurt her ears. She had neck and back pain. She had been treated with Cortisone injections to the low back. She also had COPD. She used an inhaler. On exam, Dr. Leung noted that plaintiff was hard of hearing and he had to speak louder and repeat himself. She could not hear fingers being rubbed together in front of the left ear. She had slightly decreased breath sounds with no rales, rhonchi, or wheezes. Her gait was normal. She could heel walk, toe walk, and squat. Range of motion of the cervical and lumbar spine was decreased. Arm, leg, and grip strength were full, and sensation was intact. The impression was "at least moderate" decreased hearing; neck and back pain; and COPD. X-rays showed degenerative disc disease with disc space narrowing at L1-2, 4-5, and L5-S1. (Tr. 295-304).

The transcript contains records labelled "Office Treatment Records, dated

12/16/2015 to 02/09/2016, from Joanna Polistico MD." These are not Dr. Polistico's office notes. Rather they are physical therapy records and an MRI report from December 2015.

An MRI of the lumbar spine was done on Dr. Polistico's order in December 2015. This study showed collapse of the disc space at L5-S1 with Modic Type 2 endplate changes. There was fluid within the disc. There was a high-intensity zone at this level "consistent with a large posterior annular tear/fissure." (Tr. 321-322). Dr. Polistico referred plaintiff for physical therapy for her low back, which she attended from December 29, 2015, through February 9, 2016. At the visit, the physical therapist noted that plaintiff's pain was about the same. She recommended that she follow up with her primary care physician and possibly a referral to a back specialist. (Tr. 305-320).

## Analysis

Under her second point, plaintiff argues that the ALJ impermissively relied on the lack of medical treatment without enquiring into the reason for the lack of treatment.

The very first observation made by ALJ Shinn in discussing plaintiff's RFC was "At the outset, I note that the claimant's treatment has been sporadic and rare." (Tr. 23). Later, he noted several times that the "record, when considered as a whole" did not support her contentions. (Tr. 24, 25).

The ALJ relied on the lack of treatment to support his conclusion that plaintiff's statements about her symptoms were not accurate without asking why

she did not get treatment. This was error. *Garcia v. Colvin*, 741 F.3d 758, 761-762 (7th Cir. 2013). Further, he ignored the explanation she offered in her written statements to the agency prior to the hearing. It is clear that she had difficulty paying for treatment before she got her medical card. Both Dr. Yu and the Orthopedic Center refused to treat her because of unpaid bills. Even after she obtained a medical card, she had difficulty finding a doctor who would accept Medicaid.

The Commissioner argues that the ALJ "did not place undue emphasis on a lack of treatment." Doc. 27, p. 16. While the emphasis might not have been "undue," the ALJ clearly relied on that factor, as he highlighted it by pointing it out first.

Further, while relying on the lack of treatment, the ALJ ignored the obvious fact that not all of the treatment records were in the file. None of Dr. Polistico's treatment notes were in the record. Plaintiff said she was treated by Dr. Yu in December 2016, and that record was not in the file. She also said she was treated by Drs. Freehill and Kovalsky, but there are no records from either doctor, or any records from the Orthopedic Center. An ALJ has an independent duty to develop the record fully and fairly. 20 C.F.R. § 416.912(b). While that duty is enhanced where plaintiff was pro se at the agency level, it is not eliminated where a claimant had counsel. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)("This duty is enhanced when a claimant appears without counsel….").

Under her first point, plaintiff argues that the ALJ "played doctor" by relying on his own interpretation of the December 2015 lumbar MRI. The Court agrees.

At Tr. 26, the ALJ stated, "The disc of the claimant's L5/S1 joint is reduced in size and there is suggestion of an annular tear, with mild foraminal stenosis (3F/18), which militates in favor of reduction to light work." However, no doctor opined that the MRI report would support a finding that plaintiff could do light work. The MRI report was not reviewed by Dr. Leung or by a state agency consultant. And, no one knows what Dr. Polistico thought about the MRI results because Dr. Polistico's office notes are not in the record. It was error for the ALJ to rely on his own interpretation of the 2015 lumbar MRI. *Israel v. Colvin*, 840 F.3d 432, 439 (7th Cir. 2016); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014).

In view of these errors, it is not necessary to analyze plaintiff's other arguments.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009), internal citations omitted. The Court must conclude that ALJ Shinn failed to build the requisite logical bridge here. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during

the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:** November 6, 2018.

s/ Clifford J. Proud
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**